UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**STRIKE 3 HOLDINGS, LLC,**

    *Plaintiff*,

v.                                                       Case No. 5:22-CV-0206-JKP

**JOHN DOE, subscriber assigned IP address 67.11.235.38,**

    *Defendant*.

### MEMORANDUM OPINION AND ORDER

Before the Court is a redacted version of *Plaintiff's Motion for Default Judgment Against Defendant* (ECF No. 29) (sealed, unredacted version found at ECF No. 27). In support of the motion, Plaintiff attaches eight documents: (1) memorandum in support (ECF No. 29-1); (2) an affidavit of counsel (ECF No. 29-2); (3) a copy of the First Amended Complaint ("FAC") (ECF No. 29-3, sealed, unredacted version found at ECF No. 12); (4) an affidavit of service (ECF No. 29-4); (5) Entry of Clerk's Default (ECF No. 29-5); (6) Invoice of Professional Service (ECF No. 29-6); (7) a proposed order granting motion (ECF No. 29-7); and (8) a Certificate of Service (ECF No. 29-8).

Pursuant to Fed. R. Civ. P. 55(b)(1), Plaintiff seeks entry of default judgment against Defendant. It provides legitimate reasons for finding that default judgment is procedurally warranted against Defendant. But that is only one step in determining whether the Court should enter default judgment. *See RLI Ins. Co. v. 2 G Energy Sys., LLC*, 581 F. Supp. 3d 817, 823-26 (W.D. Tex. 2020) (thoroughly addressing necessary prerequisites before courts enter a default judgment).

Courts apply "a three-part test to determine whether a default judgment should be entered." *Id*. at 823. Before entering a default judgment courts (1) consider whether such "judg-

ment is procedurally warranted"; (2) assess the substantive merits of asserted "claims to determine whether there is a sufficient basis in the pleadings for the judgment"; and (3) examine the requested relief to determine "what form of relief, if any, the plaintiff should receive." *Id*. Further, as in all cases, courts should assure that federal jurisdiction exists. *Id*.

Although there appears to be no issue that default judgment is procedurally warranted on the facts of this case, there must also be a sufficient basis in the pleadings for the judgment. *See RLI Ins. Co.*, 581 F. Supp. 3d at 824-25 (finding default judgment procedurally warranted on similar facts and proceeding to consider the sufficiency of the pleadings). In this case, Plaintiff asserts that, due to Defendant's default, it is entitled to default judgment based on the well-pled allegations of fact in its complaint. *See* Mot. ¶ 6. It also bases its motion on facts provided in the declaration of its attorney, its memorandum in support, and "all pleadings and evidence on file in this matter," as well as "such additional evidence or arguments as may be accepted by the Court." *See id*. ¶ 7.

Initially, this case concerned alleged copyright infringement of Plaintiff's adult movies by a person only "known by an IP address." Compl. (ECF No. 1) ¶ 1. Through a third-party subpoena, Plaintiff learned the subscriber's identity. ECF No. 29-2 ¶ 3. According to counsel, "Plaintiff determined that Defendant was the infringer." *Id*. Defendant, as the infringer, recorded "87 movies over an extended period of time." FAC ¶ 4. Plaintiff traced the infringer's IP address "to a physical address in this District." *Id*. ¶ 9. Defendant is a guitarist. *Id*. ¶ 51. In addition to BitTorrent activity involving Plaintiff's copyrighted works, Plaintiff provides additional allegations that the same IP address used the BitTorrent protocol to obtain three guitar related files. *Id*. ¶¶ 50, 52.

From its amended complaint, Plaintiff seeks statutory damages, attorneys' fees, and costs under 17 U.S.C. § 501. *Id*. ¶ 47. It also seeks a permanent injunction and orders compelling De-

fendant to delete and permanently remove Plaintiff's works from each computer under the Defendant's possession, custody, or control. *Id*. at 8-9. Through its attorney's affidavit, it calculates incurred costs as $534, while stating that it "agrees to waive its reasonable attorneys' fees." ECF No. 29-2 ¶¶ 9-10. It seeks statutory damages of $65,250, which is calculated as $750 for each of the eighty-seven infringed works. ECF No. 29-1 at 8.

When a party applies "to the court for a default judgment," the Court has discretionary authority to conduct a hearing when "it needs to . . . (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2). This rule "does not require an evidentiary hearing," and "explicitly grants the district court wide latitude." *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993). Although the rule has undergone amendments since *James*, nothing indicates that the changes have affected the broad discretion accorded to the district courts. That discretion includes requiring the movant to provide "some proof of the facts that must be established to determine liability." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 496 (5th Cir. 2015) (parenthetically quoting 10A Charles A. Wright et al., Fed. Practice & Procedure § 2688 (3d ed.1998)).

Invoking Rule 55(b)(2) requires the movant to apply for a default judgment. Implicit within such an application lies the need to show a basis for default judgment – both procedurally and substantively. Not only does the movant have those burdens, but it has the burden "to establish its entitlement to recovery," which relates to the form of relief sought in the operative pleading. *RLI Ins. Co.*, 581 F. Supp. 3d at 826. Courts may not enter a default judgment that "differ[s] in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

Just as a party does not satisfy its burden on a motion to dismiss by simply invoking Fed. R. Civ. P. 12(b)(6), *Cantu v. Guerra*, No. SA-20-CV-0746-JKP-HJB, 2021 WL 2636017, at *1 (W.D. Tex. June 25, 2021), a party does not carry its burden to show a basis for default judgment

by simply invoking Rule 55(b)(2) and stating that it has a viable claim. While a defaulting defendant "admits the plaintiff's well-pleaded allegations of fact," the "default does not in itself warrant the court in entering a default judgment." *Nishimatsu Const. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). This is so, because "[t]here must be a sufficient basis in the pleadings for the judgment entered." *Id*. Defaulting defendants do not "admit facts that are not well-pleaded." *Id*. Nor do they "admit conclusions of law." *Id*. Courts do not treat a default "as an absolute confession by the defendant of . . . liability and of the plaintiff's right to recover." *Id*.

It is incumbent upon the movant to show entitlement to a default judgment. In this case, counsel for Plaintiff has stated that Plaintiff has identified Defendant as the infringer but does not indicate how it reached that conclusion. As discussed in detail below, the Court does not find Defendant's connection to the IP address sufficient of itself to entitle Plaintiff to a default judgment. Further, although Plaintiff does identify three guitar files that were also obtained through the IP address that may connect a guitarist such as Defendant to the BitTorrent peer-to-peer protocol that facilitated the infringement of Plaintiff's works, the Court finds such allegations insufficient to carry Plaintiff's burden to show a sufficient basis for a judgment against the Defendant.

The Honorable Royce C. Lamberth of the United States District Court for the District of Columbia has called into question the reliability and adequacy of geolocation technology used by Strike 3 in tracing IP addresses to a specific address. *See Strike 3 Holdings, LLC v. Doe*, 351 F. Supp. 3d 160, 162 (D.D.C. 2018), *rev'd and remanded on other grounds*, 964 F.3d 1203 (D.C. Cir. 2020).[1]

> This method is famously flawed: virtual private networks and onion routing spoof IP addresses (for good and ill); routers and other devices are unsecured; malware

---

[1] Although the D.C. Circuit reversed and remanded it did not do so on the basis of the geolocation technology; instead it reversed the denial of early discovery because the District Court had (1) improperly relied on the content of copyrighted works; (2) legally erred in concluding that Strike 3 "could not state a plausible claim of infringement against the IP address subscriber even if the requested discovery was granted"; and (3) "drew unsupported, negative inferences against Strike 3 regarding its litigation tactics and motivation in seeking the requested discovery". *Strike 3 Holdings, LLC v. Doe*, 964 F.3d 1203, 1208 (D.C. Cir. 2020).

> cracks passwords and opens backdoors; multiple people (family, roommates, guests, neighbors, etc.) share the same IP address; a geolocation service might randomly assign addresses to some general location if it cannot more specifically identify another. Simply put, inferring the person who pays the cable bill illegally downloaded a specific file is even less trustworthy than inferring they watched a specific TV show. But in many cases, the method is enough to force the Internet service provider (ISP) to unmask the IP address's subscriber.

*Id*.

The Ninth Circuit has also questioned tracing copyright infringement to a specific individual at an IP address. *Cobbler Nev., LLC v. Gonzales*, 901 F.3d 1142, 1146–47 (9th Cir. 2018).

> Although copyright owners can often trace infringement of copyrighted material to an IP address, it is not always easy to pinpoint the particular individual or device engaged in the infringement. Internet providers . . . can go so far as to identify the individual who is registered to a particular IP address (i.e., an account holder) and the physical address associated with the account, but that connection does not mean that the internet subscriber is also the infringer. The reasons are obvious—simply establishing an account does not mean the subscriber is even accessing the internet, and multiple devices can access the internet under the same IP address.

*Id*. The Ninth Circuit affirmed dismissal of infringement claims because the "status as the registered subscriber of an infringing IP address, standing alone, does not create a reasonable inference that he is also the infringer." *Id*. at 1145.

Following *Cobbler*, another court dismissed infringement claims under Fed. R. Civ. P. 12(b)(6) because the plaintiff had "not sufficiently tied Doe to the alleged infringing conduct to support a copyright claim." *Malibu Media, LLC v. Doe*, No. 18 C 450, 2018 WL 6446404, at *1 (N.D. Ill. Dec. 10, 2018). That court recognized a split of authority as to whether identification of an infringer solely by IP address "sufficiently tie[s] a defendant to the infringing conduct." *Id*. at *3 (collecting cases). Nevertheless, the court "agree[d] with the Ninth Circuit and those courts that have found that a plaintiff must allege more than simply the registration of an IP address to an individual in order to proceed against that individual for copyright infringement." *Id*. There must be "something more" to allow a copyright infringement claim to proceed. *Id*. The court de-

5

clined to limit *Cobbler* to its facts, i.e., "the IP address serviced an adult care home and both residents and visitors could access the IP address," because "the Ninth Circuit did not confine its analysis to those facts nor [did the court] believe such a narrowing appropriate." *Id*. It also found an alleged "persistent pattern of copyright infringement" insufficient to state a plausible claim of infringement "without more facts." *Id*.

At least one court has found the reasoning in these cases "to be persuasive" and thus required the plaintiff "to show something more than merely tying Defendant to an IP address in order to sufficiently establish copyright infringement" in the context of default judgment. *See Malibu Media v. Park*, No. CV-17-12107 (JMV) (MF), 2019 WL 2960146, at \*6 (D.N.J. July 9, 2019). Because the court was "not satisfied that Plaintiff ha[d] sufficiently demonstrated that the named Defendant actually committed the complained of acts of infringement," the court denied an unopposed motion for default judgment without prejudice. *See id*. at \*1, 6.

The Eastern District of New York has also voiced concerns about early discovery in the context of infringement claims against defendants who are "identified only by IP address." *In re BitTorrent Adult Film Copyright Infringement Cases*, 296 F.R.D. 80, 84 (E.D.N.Y.) (recommendation of Mag. J.) *adopted sub nom. Patrick Collins, Inc. v. Doe 1*, 288 F.R.D. 233 (E.D.N.Y. 2012). While the operative complaint asserted that such defendants "downloaded the subject 'work' and participated in the BitTorrent swarm," the court found an underlying premise questionable. *See id*. It noted:

> However, the assumption that the person who pays for Internet access at a given location is the same individual who allegedly downloaded a single sexually explicit film is tenuous, and one that has grown more so over time. An IP address provides only the location at which one of any number of computer devices may be deployed, much like a telephone number can be used for any number of telephones. As one introductory guide states:
>
>> If you only connect one computer to the Internet, that computer can use the address from your ISP. Many homes today, though, use routers to share a single Internet connection between multiple

> computers. Wireless routers have become especially popular in recent years, avoiding the need to run network cables between rooms. If you use a router to share an Internet connection, the router gets the IP address issued directly from the ISP. Then, it creates and manages a subnet for all the computers connected to that router.

Thus, it is no more likely that the subscriber to an IP address carried out a particular computer function—here the purported illegal downloading of a single pornographic film—than to say an individual who pays the telephone bill made a specific telephone call.

Indeed, due to the increasingly popularity of wireless routers, it [is] much less likely. While a decade ago, home wireless networks were nearly non-existent, 61% of U.S. homes now have wireless access. Several of the ISPs at issue in this case provide a complimentary wireless router as part of Internet service. As a result, a single IP address usually supports multiple computer devices—which unlike traditional telephones can be operated simultaneously by different individuals. Different family members, or even visitors, could have performed the alleged downloads. Unless the wireless router has been appropriately secured (and in some cases, even if it has been secured), neighbors or passersby could access the Internet using the IP address assigned to a particular subscriber and download the plaintiff's film. As one court noted:

> In order to allow multiple computers to access the internet under the same IP address, the cable modem may be connected to a router, or may itself function as a router, which serves as a gateway through which multiple computers could access the internet at the same time under the same IP address. The router could be a wireless device in which case, computers located within 300 feet of the wireless router signal could access the internet through the router and modem under the same IP address. The wireless router signal strength could be increased beyond 600 feet if additional devices are added. The only way to prevent sharing of the wireless router is to encrypt the signal and even then an individual can bypass this security using publicly available software.

*Id.* at 84-85 (citations and footnotes omitted).

In adopting that recommendation in full, the District Court further discussed use of an IP address to identify infringers. *See Collins*, 288 F.R.D. at 237-39. It noted that many courts are skeptical "of the use of IP addresses to identify file sharing defendants in cases involving pornographic films." *Id.* at 238 (listing cases).

More recently, Magistrate Judge Orenstein in the Eastern District of New York has simp-

7

ly found no good cause for requested expedited discovery in part due to the tenuous assumption that "the person who engaged in the allegedly infringing conduct in each case" is "the same person as the subscriber of internet service associated with the IP address Strike 3 has identified." *Strike 3 Holdings, LLC v. Doe*, 331 F.R.D. 14, 16 (E.D.N.Y. 2019).

This Court recognizes the nuances between granting expedited discovery versus granting dismissal under Fed. R. Civ. P. 12(b)(6) versus granting a default judgment. But despite the differences at these litigation stages, there is a shared concern regarding reliance on an IP address to sufficiently connect infringing conduct to the person responsible for that IP address. While the case now before the Court has passed the expedited discovery stage, many concerns stated by Magistrate Judge Orenstein, *see id*. at 16-20 (discussing various concerns about good cause for expedited discovery in these types of cases), are relevant to this case and consistent with this Court's exposure to Strike 3 litigation in the Western District of Texas, San Antonio Division. The Court, moreover, shares the concerns expressed in the other cases.

The Court further recognizes that courts have granted motions for default judgment when the plaintiff has provided enough facts to support a plausible claim for relief against the named defendant. *See Strike 3 Holdings, LLC v. Andaya*, No. 21-CV-00760-VKD, 2021 WL 5123643, at *4 (N.D. Cal. Nov. 4, 2021) (recommendation of Mag. J.) *adopted by* 2021 WL 5908421 (N.D. Cal. Dec. 14, 2021); *Malibu Media, LLC v. Mantilla*, No. 3:18-CV-01369 (JAM), 2020 WL 6866678, at *1 (D. Conn. Nov. 20, 2020) (granting third motion for default judgment after plaintiff finally provided enough facts to state a plausible claim). But "[o]nce Strike 3 learns the defendant's identity, it cannot rely on a bare allegation that a defendant is the registered subscriber of an IP address associated with infringing activity to state a plausible claim for direct or contributory copyright infringement." *Andaya*, 2021 WL 5123643, at *3.

For Plaintiff to be entitled to a default judgment, it must provide more than the IP address

connected to the Defendant. Here, Plaintiff alleges that Defendant is a guitarist and that the BitTorrent protocol was used to obtain three guitar files in addition to the eighty-seven works of Plaintiff. But it does not explain how it knows Defendant is a guitarist or how he is connected to the three guitar works downloaded other than his IP address. In these types of cases of infringement, the Court is well within its discretion to require Plaintiff to provide some proof of facts alleged. The risk is simply too great of imposing liability on the wrong person without enough facts to at least state a plausible infringement claim against the named Defendant. An absence of "evidence (rather than mere allegations) concerning Strike 3's investigation and how it linked Defendant to the alleged acts of infringement" is problematic. *See Strike 3 Holdings, LLC v. Doe*, No. 21-CV-08818-SVK, 2022 WL 17178309, at *4 (N.D. Cal. Nov. 23, 2022).

The Court finds the Plaintiff's additional allegations insufficient to state a plausible claim of infringement against the named Defendant. It still remains entirely speculative as to whether the named Defendant was the infringer. Plaintiff has provided nothing to indicate who lived at the location with the IP address or who had access at the relevant times. Although "Plaintiff logged BitTorrent network activity emanating from" the same IP address involving both its works and the three guitar works, it provides no indication as to whether the BitTorrent activity came from the same client or multiple clients. Nor has Plaintiff provided any other evidence from any investigation to support finding that the named Defendant is the most likely person to have used BitTorrent at the location of the IP address.

Without a greater showing than present on the current record, the Court **DENIES** *Plaintiff's Motion for Default Judgment Against Defendant* (ECF No. 29) without prejudice to Plaintiff seeking default judgment based on a more complete evidentiary record tying Defendant to the acts of infringement alleged in this case. Any such motion shall be filed **on or before November 4, 2024**, and include a proposed judgment for the Court to enter should it find a default

judgment warranted. In addition, Plaintiff may include with such motion whatever evidence it wants the Court to consider in making its determination as to entry of default judgment. If Plaintiff does not timely file a motion that shows entitlement to default judgment, the Court may dismiss this case without prejudice through Fed. R. Civ. P. 41 for lack of prosecution or failure to comply with a court order.

**IT IS SO ORDERED this 7th day of October 2024.**

*Jason Pulliam*
**JASON PULLIAM
UNITED STATES DISTRICT JUDGE**